STEEL v. STEEL.

1. MORTGAGES—FORECLOSURE—SALE—TIME—STATUTES.
   A deed of mortgaged premises sold under foreclosure proceedings is valid if in conformity with section 12677, 3 Comp. Laws 1915, which amended section 516, 1 Comp. Laws, by shortening the time for sale from one year to six months after the filing of the bill.

2. SAME—REDEMPTION—TITLE.
   Where the sale was made before the equity of redemption had expired, the title would vest in the buyer if no redemption were had.

3. SAME—FORECLOSURE—SALE—REDEMPTION.
   Where a son was made a party defendant in foreclosure

proceedings on land of his father because he held a second mortgage and was assignee of certain rights under an execution levy, and not because of any claim of title to the premises, his subsequent purchase from the buyer at the foreclosure sale did not amount to a redemption.

4. CANCELLATION OF INSTRUMENTS — DEEDS — INCOMPETENCY — FRAUD.

In proceedings to set aside a deed of a homestead from a father to a son and of a store building sold on mortgage foreclosure, on the ground that the father was mentally incompetent and was defrauded by the son, *held*, that the deeds should not be disturbed, the incompetency of the father and the charge of fraud not being established by the record.

Appeal from Calhoun; North, J. Submitted January 16, 1918. (Docket No. 97.) Decided June 3, 1918.

Bill by May Steel against Daisy Steel, E. Floyd Hoaglin, and others to set aside certain deeds. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*J. M. Hatch & Son,* for plaintiff.

*Jacob Steketee* (*Charles E. Ward,* of counsel), for defendants Steel.

*Howard W. Cavanagh,* for defendant Hoaglin.

BIRD, J. The bill in this case was filed in August, 1915, in the Calhoun circuit court to set aside two deeds conveying property theretofore owned by William Steel. The plaintiff is a daughter of William Steel, deceased, the defendants are the other children of William Steel, the widow and daughter of the deceased son Sidney, and E. Floyd Hoaglin, who claims title to the store property.

William Steel was engaged in the business of a jeweler in the city of Albion for many years and was the owner of a home and a store in that city, both

subject to mortgage. In his later years he did not appear to get on well financially and in consequence thereof he was assisted by his son Sidney, who lived in Grand Rapids. In 1905 he conveyed his homestead to Sidney subject to a mortgage of $1,100, reserving therein a life interest to himself. In 1908 the Commercial & Savings Bank of Albion commenced foreclosure proceedings, in chancery, on its mortgage against the store. Later it was sold and bid in by the bank and on July 3d was conveyed to Sidney and Dollie, his wife, for the amount due on the mortgage. In July, 1914, Sidney died intestate leaving his widow, Dollie, and a daughter, Gladys. In September, 1914, the widow and daughter joined in a conveyance of the store to defendant Hoaglin. The court is now asked to set aside this conveyance, and also the conveyance of the homestead to Sidney in 1905, on the ground that William Steel was mentally incompetent and was defrauded by his son Sidney. The chancellor found neither evidence of mental incompetency nor of fraud, and, therefore, denied relief and dismissed the bill. .

1. The first question raised by plaintiff is that Sidney had no title to the store because the foreclosure proceedings of the bank mortgage were defective. The point made against the proceedings is that the bill was filed on July 17, 1908, the sale was made April 3, 1909, and the conveyance made to Sidney by the bank was on July 3, 1909, all taking place within a year. Counsel calls our attention to section 516, 1 Comp. Laws, which provides that no sale shall take place under foreclosure proceedings until after one year from the filing of the bill. Counsel has evidently overlooked the fact that that section was amended by Act No. 200, Pub. Acts 1899 (3 Comp. Laws 1915, § 12677), shortening the time for sale from one year to six months, and providing that any time within six months after the sale redemption could be made

by those entitled to redeem. Therefore, it appears that the deed to Sidney was not made by the bank until after the foreclosure sale, but was made before the equity of redemption had expired. This would vest the title in Sidney and his wife if no redemption were had.

2. A further claim is made that payment by Sidney to the bank for the conveyance amounted to a redemption upon his part because of the fact that he was made a party defendant to the foreclosure proceedings. The foreclosure proceedings disclose that Sidney was made a party because he was the holder of a second mortgage and was assignee of certain rights under an execution levy, and not because of any claim of title to the premises. Under these circumstances it could hardly be said that his purchase of title from the bank amounted to a redemption of the premises.

3. The charge that William Steel was mentally incompetent and that he was defrauded by Sidney is not established by the record. The value of the store was about five thousand ($5,000) dollars. The mortgage claim of the bank plus the one thousand ($1,000) dollars, second mortgage, held by Sidney, together with his interest in the execution levy against the premises amounted to substantially that sum. The homestead appears to have been worth about twenty-five hundred ($2,500) dollars with a mortgage thereon of eleven hundred ($1,100) dollars, at the time it was conveyed to Sidney and in addition a life use was reserved by the father. During the years that followed the conveyance of the homestead the father appears to have been in failing circumstances and the son Sidney came to his rescue and advanced money from time to time to pay interest, taxes and for repairs. He also assisted his father in his business and had he not done so his business career would doubtless have been cut short much sooner than it was.

He further permitted his father to occupy the store free of rent after he received the title, and did not even require him to pay the taxes nor to keep it in repair. Not only did Sidney assist his father financially in these ways, but after doing so he manifested no disposition to demand his "pound of flesh." Evidently in response to some criticism that he had gotten all the property of his father's he wrote to plaintiff on May 30, 1914, just before his death, requesting her to have their father make a will, saying in part:

"Have Mr. Cooper, the lawyer, if he is there, or anybody you wish, make a will for father and send it up to me. You can fix it any way that you wish. All I want is the money I have put in."

This suggestion was never acted upon and the record does not show whether it was ever brought to the attention of the father. The father, however, was in full possession of all the facts, and knew the extent to which Sidney had assisted him and he was content during the rest of his life to leave matters as they were, and we see no reason for disturbing them now.

4. Defendant Hoaglin, who purchased the store, testified that he knew nothing of these matters, and that he purchased the premises in good faith and for a valuable consideration, and that he had materially improved them since his purchase.

The decree made by the trial court will be affirmed with costs in this court to defendants Dollie and Gladys Steel, and also to defendant Hoaglin.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.